FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 16 2015 ★
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
WILLIS C. SANDERS,

                    Plaintiff,

            -against-

GARDEN CITY POLICE DEPARTMENT, et al.,

                    Defendants.

-------------------------------------------------------------------X

ORDER
09-CV-2393 (JFB)(SIL)

JOSEPH F. BIANCO, District Judge:

Before the Court is a Report and Recommendation ("R&R") from Magistrate Judge Steven I. Locke, recommending that the Court to grant in part and deny in part the motion for summary judgment by the remaining defendants in this action, the Garden City Police Department ("GCPD"), Detective Sergeant James Bartkowski, and Detective Kevin Madden (collectively, the "Village defendants"). For the reasons set forth below, the Court adopts the thorough and well-reasoned R&R in its entirety, and denies the motion with respect to plaintiff's excessive force, equal protection, and related 42 U.S.C. § 1985 conspiracy claims, and grants the motion with respect to plaintiff's other claims, which are dismissed with prejudice.

## I. STANDARD OF REVIEW

A district judge may accept, reject, or modify, in whole or in part, the findings and recommendations of the Magistrate Judge. *See DeLuca v. Lord*, 858 F. Supp. 1330, 1345 (S.D.N.Y. 1994); *Walker v. Hood*, 679 F. Supp. 372, 374 (S.D.N.Y. 1988). As to those portions of a report to which no "specific written objections" are made, the Court may accept the findings contained therein, as long as the factual and legal bases supporting the findings are not clearly erroneous. *See*

Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 149 (1985). When a party submits a timely objection to a report and recommendation, the district judge will review the parts of the report and recommendation to which the party objected under a *de novo* standard of review. *See* 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Fed. R. Civ. P. 72(b)(3) ("The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.").

## II. ANALYSIS

In the R&R, Magistrate Judge Locke recommends that the Court deny defendants' motion for summary judgment under Federal Rule of Civil Procedure 56 with respect to (1) plaintiff's excessive force claim under 42 U.S.C. § 1983; (2) plaintiff's equal protection claim under Section 1983 for the alleged assault; and (3) plaintiff's Section 1985 conspiracy claim related to the alleged use of excessive force and violation of his equal protection rights. Magistrate Judge Locke finds that material issues of fact exist regarding all of these claims, based in particular on plaintiff's sworn statements as to the events on the night of the alleged interrogation and assault by defendants Bartkowski and Madden. Magistrate Judge Locke further recommends that the motion be granted as to plaintiff's other claims for denial of medical treatment, unlawful seizure/confiscation of property (and the related Section 1985 conspiracy claim), municipal liability under *Monell*, and violation of his rights under 42 U.S.C. § 1982. Finally, Magistrate Judge Locke recommends that this Court deny the motion for summary judgment on the grounds of qualified immunity as to the individual defendants.

2

Defendants filed timely objections to the R&R. (*See* Defs. Mem. of Law Objecting to R&R ("Defs. Obj."), ECF No. 320.) Plaintiff did not file any response to the R&R. As an initial matter, defendants make a general objection that "[p]laintiff has not submitted one piece of admissible evidence." (Defs. Obj. at 7.) This argument, which permeates the objections to the individual claims, seems to completely discount plaintiff's sworn statements that he was assaulted by defendants Madden and Bartkowski without any justification. Defendants suggest that plaintiff's sworn statements should be disregarded because they are "uncorroborated" and contradicted by defendants' evidence that no such assault took place. (*See id.* at 4.) However, that argument is inconsistent with the law. It is well settled that "[p]laintiff's sworn deposition testimony, even if uncorroborated, is evidence that can be considered by a jury." *Ingenito v. Riri USA Inc.*, No. 11-CV-2569 (MKB), 2013 WL 752201, at *10 n.9 (E.D.N.Y. Feb. 27, 2013) (citations omitted). Moreover, as discussed in detail below, the inconsistencies in some of plaintiff's testimony and statements, as well as evidence contradicting his sworn statements, do not provide sufficient grounds to disregard such testimony; rather, these credibility issues must be resolved by a jury in this case.

A. Excessive Force Claim

Defendants argue that the Magistrate Judge erred in recommending that plaintiff's excessive force claim go forward because plaintiff signed medical forms indicating that he did not have any injuries, and, at one portion of his deposition, indicated that he was telling the truth on those forms. In essence, defendants suggest that, because of the forms and deposition testimony, plaintiff's other sworn testimony about the alleged assault and injuries should be deemed incredible, as a matter of law. However, having carefully reviewed the record, this Court concludes that this objection is without merit because, in the case, the credibility issues raised by the forms and plaintiff's deposition testimony must be decided by a jury.

The standard rule is that, at the summary judgment stage, the court "is . . . to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, in *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005), the Second Circuit recognized that there is a narrow exception to this well-established rule in the "rare circumstances" where the sole basis for the disputed issues of fact is the plaintiff's "own testimony" which is so lacking in credibility that no reasonable juror could find for the plaintiff. In affirming the dismissal of the plaintiff's suit at the summary judgment stage, the Second Circuit explained:

> [W]e hold that the District Court did not err in granting defendants' motion for summary judgment on the basis that Jeffreys's testimony– which was largely unsubstantiated by any other direct evidence– was "so replete with inconsistencies and improbabilities" that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in his complaint.

*Id.* at 505 (citing *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 475 (S.D.N.Y. 2003) (dismissing excessive force claims brought under 42 U.S.C. § 1983)); *see also see also Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572 (2d Cir. 1991) (holding that the post-trial sworn statements of the president of the plaintiff corporation did not create a factual issue because "a party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing his own prior sworn testimony.") (citations omitted); *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975) (holding that plaintiff failed to create an issue of fact where plaintiff's affidavits conflicted with plaintiff's earlier deposition); *Schmidt v. Tremmel*, No. 93 Civ. 8588 (JSM), 1995 WL 6250, at *3 (S.D.N.Y. Jan. 6, 1995) (finding no genuine issues of material fact where "[n]o reasonable person would undertake the suspension of disbelief necessary

to give credit to the allegations made in [plaintiff's] complaint or in her subsequent missives to the court"); *Ward v. Coughlin*, No. 93-CV-1250 (FJS)(RWS), 1995 U.S. Dist. LEXIS 21297, at *11 (N.D.N.Y. Aug. 4, 1995) (finding plaintiff's self-serving affidavit incredible as a matter of law), *report and recommendation adopted by* 1996 U.S. Dist. LEXIS 16106 (N.D.N.Y. Oct. 21, 1996); *Price v. Worldvision Enters., Inc.*, 455 F. Supp. 252, 266 n.25 (S.D.N.Y. 1978) (addressing affidavit of party).

The Court concludes that this case is not one of those situations in which the *Jeffreys* rule can be applied. Defendants suggest that plaintiff's version of the assault cannot be credited because there are police forms that he signed that stated he had no injuries, and he admitted in his deposition that the forms were correct. However, a fuller reading of plaintiff's deposition testimony surrounding this particular question regarding the form demonstrates that plaintiff was testifying under oath that he had been assaulted by the police, that he was injured, that his injuries were obvious, and that (although he may not have requested medical attention for his injuries) he requested to see a doctor about seizure medication (with the hope that the doctor would look at his injuries):

> Q: And you have to tell me, because I just asked you. What proof do you have, Mr. Sanders?
>
> A. Well, MRI records right here from Bare Hill which substantiates that I have a torn muscle and there is something wrong right here in my rotary here in my left shoulder joint.
>
> Q. Okay.
>
> A. That's proof.
>
> Q. That's proof, it's proof of what?
>
> A. It's proof of what I said happened; okay? It's proof of an injury that was

sustained by the plaintiff because of the defendant's anger for not being able to get the answer that they wanted from the plaintiff.

Q. So I'm going show you, again, what's been marked as Exhibit-2. You were asked about your condition, you said you had no injuries; correct?

(Whereupon, the witness is examining the document.)

A. Yeah, and I explained that also in the motion.

Q. So, you were lying when you filled this out.

A. No, I wasn't lying. I said I needed seizure medication. I wanted to see a doctor. If the doctor would have saw my injuries, he would have also catered to my injuries. I didn't see a doctor.

Q. So when you were asked if had you any injuries and you said, no, you were telling the truth here?

A. Yeah.

Q. Okay.

A. But why didn't I get a chance to see a doctor?

Q. I'm going to show you again what was marked as Exhibit-3 and you were asked if you were in good health here and you said yes; is that correct?

A. I was also – I also said that I needed to see a doctor because I take seizure medication.

Q. Okay. That's fine. But you didn't indicate here any kind of injuries; right?

A. The injuries was self-explanatory. All you had to do was look at me.

Q. But you told them there were none; correct?

A. All you had to do was look at me. Nassau County Medical Center saw the

>  injuries.
>
> Q.  So why – you didn't tell them right? You didn't tell them. You didn't tell them; right?
>
> A.  I didn't tell them?
>
> Q.  You didn't tell anybody.
>
> A.  What do you think I was going over to the medical center for taking physical therapy for my arm and then they came to a surgery determination; did you investigate that?

(Sanders Dep., ECF No. 320-1, at 105-07.) Thus, the deposition excerpt cited by defendants was hardly an unqualified concession that plaintiff had no injuries and that the form confirmed that. Instead, plaintiff appears to be testifying that he was injured, the injuries were clearly noticeable, but that he signed a form indicating no injury. In the context of the deposition, as well as plaintiff's sworn testimony as a whole, his answer to one question (about the accuracy of the forms) does not provide a basis to find his excessive form claim to be so lacking in credibility under *Jeffreys* that it cannot survive summary judgment. Instead, although defendants can certainly use the deposition testimony and forms to impeach plaintiff, his credibility (and the corresponding issue of whether he was subjected to excessive force) needs to be resolved by a jury in this case.[1] *See, e.g., D'Attore v. New York City Dep't of Corr.*, No. 10 Civ. 815 (JSR)(MHD), 2012 WL 4493977, at *12 (S.D.N.Y. Sept. 12, 2012) (holding that, notwithstanding inmate report indicating "no apparent injuries" and

---

[1] Defendants also object to the R&R's suggestion that the allegation regarding the "lost suit" might be used by plaintiff to support his excessive force claim. In particular, defendants argue that there is no evidence that the suit was lost, and the alleged issue regarding his change of clothes cannot plausibly support his excessive force claim. However, the Court need not address that objection because this Court concludes that, even in the absence of these allegations regarding the lost suit and change of clothes, there is sufficient evidence for plaintiff's excessive force claim to survive summary judgment. In other words, plaintiff's sworn statements regarding the assault are sufficient in this case to raise a genuine issue of fact regarding whether excessive force was used that cannot be resolved on summary judgment.

7

alleged inconsistencies between complaint and plaintiff's deposition testimony and other issues regarding plaintiff's credibility, "we are not persuaded that the record justifies a finding, as a matter of law, that no physical assault took place"), *report and recommendation adopted by* 2012 WL 5951317 (S.D.N.Y. Nov. 8, 2012); *Watkins v. City of Buffalo*, No. 95-CV-0816E SC, 1999 WL 1068239, at *6 (W.D.N.Y. Nov. 12, 1999) ("As to this plaintiff's credibility, clearly such is called into question by his apparent reversals as to both his claimed injuries and the alleged behavior of defendants Watkins and Webster subsequent to his taking the plaintiff's into custody. However, it is not for this Court at this time to assess a party's credibility.").

B. Equal Protection Claim

Defendants also object to the R&R's analysis with respect to the equal protection claim. In particular, defendants argue the following: (1) plaintiff gave differing accounts as to racial comments made to him during his arrest, and never identified the speaker of the comments; (2) those allegations are contradicted by defendant Bartkowski's sworn statement; and (3) Detective Madden could not have been involved in the arrest at 10:38 a.m., because he has submitted a sworn statement that he did not work that day until 2:00 p.m. As set forth below, this Court concludes that, notwithstanding the contradictions between defendants' evidence and plaintiff's sworn statements and the other issues with plaintiff's sworn statements regarding the racial comments, his sworn statements are sufficient to create disputed issues of fact that preclude summary judgment on his equal protection claim.

With respect to defendant Madden's involvement in the arrest, plaintiff testified under oath that both Madden and Bartkowski arrested him:

> Q: Okay. When you were arrested, did Detective Sergeant Bartkowski, did he arrest you?

> A. Yes, him and Detective Madden arrested me. He told me that I was being placed under arrest for the burglary of an establishment.
>
> Q. They were the ones on the street that arrested you; is that correct?
>
> A. Yes, they were the ones that were called to the scene, you know.

(Sanders Dep., ECF 273-3, at 22.) Defendants suggest that this sworn testimony should be disregarded by the Court because plaintiff's physical description of Detective Madden was inaccurate, and Madden has sworn that he did not work that day until after the arrest had already taken place. However, as discussed *supra*, this Court's role is not to weigh this type of conflicting evidence in the record; instead, these credibility issues must be decided by the jury in this case.

The Court reaches the same conclusion with respect to the evidence of racial animus. As Magistrate Judge Locke noted, "While Sanders has not provided any evidence in support of his allegations regarding attacks on other minorities, he has claimed that during his post-assault interrogation, he was 'subjected to abusive language (called [the N-word])' by unspecified individuals, and called 'a Black A__hole' by Barkowski. . . ." (R&R, at 22). Magistrate Judge Locke correctly concluded that, if those allegations are credited, such statements could provide evidence of disparate treatment based upon race. Although defendants suggest that plaintiff's allegations cannot be credited because he has not been consistent about who made the derogatory statements and has given different versions as to the substance of such statements, these credibility issues (as with the other above-referenced issues) need to be resolved by a jury in this case. Moreover, to the extent that defendants suggest that comments by one officer can never be used to infer racial animus by other officers allegedly involved in the same unconstitutional activity, the Court disagrees. If it were proven that the police officers were acting jointly to assault plaintiff, a jury rationally could infer, depending upon the totality of the circumstances, that racial epithets uttered by one officer reflected

9

a racial animus shared by the other police officers allegedly involved in the assault. *See, e.g., East v. City of Chicago*, 719 F. Supp. 683, 695 (N.D. Ill. 1989) ("At the station, however, there *is* an allegation (which must be credited) of concerted action: Skahill, Rogers, and other unnamed officers beat East. That is enough to supply the conspiracy ingredient under the cases. On the racial animus front, . . . racial epithets may provide evidence of such animus. And it has already been held there is enough here to support a reasonable inference that the animus overtly expressed by the unnamed officer during the arrest was also covertly present in Skahill and Rogers (and in any unnamed officers present at the arrest who later participated in the station beating).") (emphasis in original). Here, plaintiff alleges that Bartkowski and Madden were responsible for the assault, and his allegations of the use of racial epithets by defendant Bartkowski and other unspecified officers are sufficient to preclude summary judgment on the equal protection claim.

C. The Conspiracy Claim

Defendants also object to the R&R on the ground that Magistrate Judge Locke allowed a conspiracy to commit assault claim to proceed even though "Plaintiff never indicated or alleged that his Conspiracy claims involved the alleged assault." (Defs.' Obj. at 6.) Defendants cite to plaintiff's deposition where, in response to questioning, he agrees that the basis for his Section 1985 is his lost property. As set forth below, the Court agrees with Magistrate Judge Locke that, liberally construing plaintiff's *pro se* Third Amended Complaint, he certainly alleges a plausible conspiracy to assault him under Section 1985, and the questioning at the deposition does not indicate that plaintiff understood that he was abandoning or withdrawing any such claim.

The Court disagrees with defendants' assertion that plaintiff has never alleged a conspiracy to assault him. For example, in the Third Amended Complaint attached to his motion to amend filed on April 7, 2011, plaintiff alleges the following:

10

> Thereafter, Bartkowski and Madden commenced their interrogation. They told plaintiff that they believed he had committed several crimes of the same type. Bartkowski further informed plaintiff that the District Attorney's office was offering county time in return for a guilt plea to four grand larcenies.
>
> When plaintiff refused Bartkowski informed Madden that his past experience had taught him how to deal with plaintiff; that there was a way to make plaintiff tell them who his partners were, as well as admit to four grand larcenies.
>
> At that point Barkowski entered the cell and began punching and assaulting plaintiff. Plaintiff was thrown to the floor and rolled over until he was face down. At no[] time did he attempt to resist the officer. He merely covered up to try and prevent further injury. Bartkowski then placed one foot in the small of plaintiff's back while [M]adden pulled both of his arms upward and behind him while yelling: "Talk!" All the time the officers were beating the plaintiff he was pleading with them to stop and screaming in pain. After the beating, plaintiff begged for medical attention only to be told that he would not receive any unless he pleaded guilty.

(ECF No. 117, at 6.) Plaintiff has repeated these allegations numerous times in the supplemental pleadings filed subsequent to the Third Amended Complaint. In short, there is no question that plaintiff is alleging that Bartkowski and Madden agreed to use excessive force against him. Moreover, although it is not described as a Section 1985 claim, it is well settled, as Magistrate Judge Locke noted, that a *pro se*'s pleadings "must be liberally construed, and the Court reads his submissions to raise the strongest arguments they suggest." (R&R, at 14 (citations and internal quotations omitted).)

Defendants' objection focuses on plaintiff's answers in his deposition, where he stated that his conspiracy claim only related to the lost property. However, having reviewed the deposition excerpts, the Court does not believe that plaintiff was knowingly withdrawing or disavowing any claim for the alleged conspiracy to assault him. As a threshold matter, the Court notes that plaintiff has alleged that the conspiracy to take his property was, in part, to conceal the assault. (*See* Pl. Opp. Mem., ECF No. 299, at 6 ("The initial conspiracy by Bar[t]kowski & Madden to take Plaintiffs' property not for evidentiary purposes, but to conceal the unwarranted assault. . . .").) Thus, plaintiff may view the conspiracy to assault him as subsumed within the conspiracy to take his property. In fact, at times in the deposition, plaintiff's explanation on this issue was less than clear. (*See* Pl.'s Dep., ECF No. 273-3, at 162 ("Q. As to your conspiracy claim, the basis for that was that your property was lost; correct? A. Well, the reason why –. Q. Mr. Sanders, we went through this before. I just want to make sure. Is that it. A. But you have to understand I had past – a past claim against Nassau County corrections. Q. Okay. But is the basis of your conspiracy claim that your property was lost; right? A. Right. Right. That's what – that's what set it off, set everything into motion. Q. Okay. Is there any other basis other than the fact that your property was lost for your Section 1985 conspiracy claim? A. Well, my property was taken and not returned.").) Moreover, it is unclear whether plaintiff understood what "Section 1985" encompassed, and that it could encompass a conspiracy to assault as well. Plaintiff was never explicitly asked in these depositions excerpts whether he was also alleging that Madden and Bartkowski conspired to assault him. Therefore, under the circumstances and given plaintiff's *pro se* status, Magistrate Judge Locke correctly liberally construed plaintiff's pleadings to contain a Section 1985 conspiracy to assault claim, notwithstanding plaintiff's answers in the deposition where he agrees that such claim is limited to lost property. However, prior to trial, after explaining the scope of Section 1985 to

plaintiff, the Court will confirm with plaintiff whether he is alleging a conspiracy to assault him. If plaintiff disavows any such claim to the Court, that particular claim will be dismissed

In sum, having reviewed the entire R&R under a *de novo* standard of review, the Court adopts the thorough and well-reasoned R&R in its entirety.[2]

---

[2] Although defendants did not specifically object to the R&R's conclusion that the issue of qualified immunity with respect to the individual defendants could not be resolved at the summary judgment stage of the case, the Court has also reviewed that the determination under the *de novo* standard and agrees with Magistrate Judge Locke. In particular, if plaintiff's version of the facts is accepted and all reasonable inferences are drawn in his favor, it would not have been objectively reasonable for defendants to gratuitously assault plaintiff without justification. In short, there are disputed factual issues as to the defendants' conduct relevant to the determination of whether it was objectively reasonable for defendants to believe their alleged acts were lawful, and those factual issues preclude summary judgment on qualified immunity grounds. *See, e.g., Tarver v. City of Edna*, 410 F.3d 745, 754 (5th Cir. 2005) (denying qualified immunity on excessive force claim relating to alleged slamming of police car door on plaintiff's foot and head, and noting that "under [plaintiff's] version of events it is not clear as a matter of law that [the police officer] acted reasonably in slamming the doors on [plaintiff]. At a minimum, determining whether [the police officer's] conduct was objectively reasonable requires factfinding and credibility assessments; dismissal is thus inappropriate at the summary judgment stage.") (quotations and citations omitted); *see also Ference v. Twp. of Hamilton*, 538 F. Supp. 2d 785, 812 (D.N.J. 2008) (denying qualified immunity on excessive force claim where plaintiff alleged that officer twisted arrestee's arm and slammed his head into a door while escorting him across police station lobby, and concluding: "This is not an allegation of an accidental bump or bruise inflicted in the course of effecting an arrest and, further, if Plaintiff's allegations are true, [the police officer's] actions were not truly taken in the course of effecting Plaintiff's arrest. Rather, running Plaintiff into the door and twisting his arms constituted a separate, independent course of conduct, serving no purpose other than to inflict discomfort and pain. This is not the hazy border between excessive and acceptable force." (quotations and citations omitted)); *Johnson v. City of New York*, No. 05-CV-2357 (SHS), 2006 WL 2354815, at *5 (S.D.N.Y. Aug. 14, 2006) ("[I]t could not be objectively reasonable for [the officer] to have believed that the use of gratuitous force beyond what is necessary to subdue an individual during a search is allowed under the law."); *Atkins v. Cnty. of Orange*, 372 F. Supp. 2d 377, 402 (S.D.N.Y. 2005) ("In the case at bar, there is an issue of fact surrounding the circumstances of the alleged excessive force. [Plaintiff] maintains that he was purposely slammed into walls by the COs on the way to the mental health unit, while defendants maintain that if [plaintiff's] body did bump into any walls, it was an accident because the COs were merely slipping on water that was on the floor as a result of the broken sprinkler. These factual issues preclude summary judgment on the defense of qualified immunity.") Accordingly, summary judgment is unwarranted on qualified immunity as it relates to the claims against the individual defendants.

## III. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that the Court adopts the R&R in its entirety. Accordingly, defendants' motion for summary judgment is denied with respect to plaintiff's excessive force, equal protection, and related 42 U.S.C. § 1985 conspiracy claims, and granted with respect to plaintiff's other claims, which are dismissed with prejudice.

SO ORDERED.

JOSEPH F. BIANCO
UNITED STATES DISTRICT JUDGE

Dated: September 16, 2015
Central Islip, New York